D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

DARYL G. SMITH,

                 Plaintiff,

     -against-

CAROLYN W. COLVIN, Acting Commissioner of
Social Security,[*]

              Defendant.

-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**11-CV-4802 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Daryl Smith ("Smith") brings this action, pursuant to 42 U.S.C. §§ 405(g) and

1383(c), seeking judicial review of the Social Security Administration's ("SSA") decision that he

is not disabled and therefore not entitled to Supplemental Security Income ("SSI") disability

benefits.  Smith argues that the SSA made two errors in denying his application for benefits: that

it (1) failed to properly evaluate the opinion of his treating physician; and (2) failed to explain its

rejection of Mr. Smith's subjective complaints of pain.  Smith also argues that new and material

evidence warrants remand for additional consideration.  Smith has filed a motion, and the

Commissioner of Social Security has filed a cross-motion, each for judgment on the pleadings

pursuant to Federal Rule of Civil Procedure 12(c).  Because the court agrees with Smith that the

Administrative Law Judge ("ALJ") failed to properly evaluate his treating physician's opinion,

the Commissioner's cross-motion is DENIED, Smith's motion is GRANTED, and this case is

REMANDED to the SSA for further proceedings.

---

[*]      Plaintiff's Complaint named Michael J. Astrue, Commissioner of Social Security, as Defendant in this case.
On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  She has therefore
been substituted as the named Defendant pursuant to Federal Rule of Civil Procedure 25(d).  See also 42 U.S.C.
§ 405(g).

# I.   BACKGROUND

## a.  Smith's Background, Employment, and Injury

Smith was born on June 14, 1963.  (Administrative Tr. ("Tr.") (Dkt. 24) at 32.)  He

reports that he suffered abuse as a child.  (Id. at 46.)  Smith finished the tenth grade but did not

graduate high school.  (Id. at 264.)  In his disability report, Smith indicated that he obtained a

generalized equivalency diploma ("GED") in 1982.  (Id. at 154.)  However, during his

administrative hearing, Smith testified that he did not have one, but when questioned, responded,

"I may have forgot."  (Id. at 33)  Smith was formerly married and has three children.  (Id.)

Smith was last employed as a cleaner by the New York City Parks Department from

January 22, 2008, to August 22, 2008.  (Id. at 36, 154.)  He stopped working because the job was

seasonal and had ended.  (Id. at 154.)  During the course of his employment, Smith lifted a pool

railing and injured his back.  (Id. at 36.)  He has not worked since.  (Id.)

## b.  Smith's Initial Treatment

On December 9, 2009, Smith underwent a biopsychosocial assessment by the Arbor

WeCare program.  (Id. at 238-53.)  Bridgett Franklin, an intake specialist and medical case

manager, interviewed Smith.  (Id. at 238-45.)  The Biopsychosocial Summary form shows that

Smith indicated that nearly every day he: (1) felt down, depressed, or hopeless; (2) had trouble

falling or staying asleep, or sleeping too much; (3) felt tired or had little energy; (4) had a poor

appetite or engaged in overeating; (5) experienced trouble concentrating; and (6) had thoughts

that he would be better off dead or hurting himself in some way.  (Id. at 240.)  Smith stated that

he last tried to kill himself in 2008 by taking "a lot of pills" but that he vomited them up.  (Id.)

Smith also informed Franklin that although he had a history of alcohol and cocaine abuse within

the last three years, he had received services for substance and alcohol abuse and suffered no

2

current problems.  (Id.)  Based on these statements, Franklin rated Smith's depression as severe.

(Id.)  She also noted that Smith had a history of legal problems and had previously been charged

with a felony.  (Id. at 242.)

### c.  Smith's Physical and Psychological Evaluation Prior to his March 8, 2010, SSI Application

On December 9, 2009, Dr. Ramakrishnayya Pattumidi, an internist for Arbor WeCare,

also examined Smith.  (Id. at 247-51.)  Smith stated that his medical conditions that related to his

ability to be employed were: depression, headache, and pain in his knees and left shoulder.  (Id.

at 247.)  He rated his current knee pain as two on a scale of one to ten, and, at its worst, a four.

(Id. at 250.)  Smith indicated that he had trouble: (1) lifting things; (2) walking more than one

block without having to stop; (3) climbing more than one flight of stairs without feeling pressure

in his legs; and (4) standing for more than forty-five minutes.  (Id. at 41.)  Dr. Pattumidi's

preliminary assessment was that Smith had "some restrictions," but Dr. Pattumidi did not impose

any specific restrictions on Smith's abilities to sit, stand, lift, carry, or push.  (Id. at 250-51.)  Dr.

Pattumidi recommended that Smith undergo a psychiatric evaluation.  (Id. at 251.)

On December 15, 2009, Dr. Pattumidi noted that a psychiatric consultation was

performed the previous day and that Smith needed a wellness plan.  (Id. at 252.)  Dr. Pattumidi's

final diagnoses were: (1) hypertension; (2) chronic headache; (3) arthralgia—knees and left

shoulder; (4) depression; (5) abnormal liver function tests; (6) hypercholesterolemia; (7)

hypermagnesemia; (8) alcohol and cocaine abuse, in remission; and (9) antisocial personality

disorder.  (Id.)  Dr. Pattumidi determined that Smith was temporarily unemployable and

recommended that Smith attend a day program for substance abuse for ninety days and take

antidepressant medication.  (Id. at 252-53.)

### d. Medical Evidence On or After Smith's March 8, 2010, SSI Application

On March 27, 2010, Dr. S. Newman, a psychiatrist at SEL Medical Group, examined Smith. (Id. at 351-56.) Dr. Newman diagnosed Smith with a mood disorder and antisocial personality disorder and prescribed Depakote and Remeron. (Id. at 353.)

On March 30, 2010, Dr. Alla Glusker—Smith's treating physician—ordered x-rays of Smith's knees, right elbow, and spine. (Id. at 272-76.) Although the x-rays of both knees and the elbow were normal, the lumbar spine showed mild dextroscoliosis and moderate spondylosis at the L3-L4 level, mild spondylosis at the L4-L5 level, and the cervical spine revealed degenerative changes. (Id. at 272, 275-76.)

On April 12, 2010, Dr. Barry S. Savitsm, of SEL Medical Group, examined Smith, who complained of experiencing upper back pain for the past two years. (Id. at 360.) Dr. Savits noted that x-rays of Smith's back were within normal limits. (Id.) Dr. Savits diagnosed pes planus (flat feet) and ordered an MRI of Smith's cervical and lumbar spine. (Id.) Dr. Savits also prescribed Robaxin, Naprosyn, and Lidoderm patches. (Id.)

On April 24, 2010, Smith again saw Dr. Newman. (Id. at 354.) Dr. Newman noted Smith's mood as depressed, anxious, and irritable and prescribed him Seroquel. (Id.)

On April 26, 2010, an MRI of the cervical spine ordered by Dr. Glusker revealed a large disc herniation into the left lateral recess and left neural foramen of C3-C4 with some impingement upon the left anterior hemicord. (Id. at 273.) Additionally, Dr. Glusker's MRI report revealed a disc bulge at C3-C4 and C5-C6, as well as canal stenosis at C5-C6. (Id.) An MRI of Smith's lumbar spine revealed a disc bulge at L3-L4, disc herniation and neural foraminal narrowing bilaterally at L4-L5, and some osteoarthritis. (Id. at 274.)

4

On April 27, 2010, Dr. Newman wrote a letter indicating that Smith was being treated at the SEL Medical Group for a mood disorder and antisocial personality disorder. (Id. at 305.) Dr. Newman reported that Smith was unable to work for twelve months or more due to his serious conditions. (Id.) At this time, Smith was taking Depakote for mood swings and Remeron and Seroquel for insomnia. (Id. at 395.)

On May 4, 2010, Dr. Elizabeth Margoshes conducted a consultative psychiatric evaluation and diagnosed Smith with a mood disorder and a personality disorder with antisocial features. (Id. at 267.) Dr. Margoshes noted that Smith would have difficulty with appropriate decision-making and had a longstanding history of poor judgment and taking advantage of others. (Id. at 266.) Dr. Maroshes also opined that Smith could not appropriately cope with stress. (Id.)

On the same day, Dr. Jerome Caiati conducted a consultative internal medicine examination. (Id. at 268-76.) Dr. Caiti diagnosed Smith with: (1) cervical degenerative disks and herniated discs; (2) lumbosacral arthritis, bulging, and herniated disks; (3) history of right and left knee pain, diagnosis unavailable; and (4) depression with history of substance abuse. (Id. at 270.) Dr. Caiti reported that Smith's ability to stand, walk, and climb were minimally limited due to his limping. (Id. at 270-71.)

On May 14, 2010, Dr. C. Anderson, a state psychiatric consultant, reviewed Smith's medical evidence and completed a psychiatric review. (Id. at 278-91.) Dr. Anderson found that Smith's affective disorder and personality disorder resulted in "moderate" limitations in maintaining social functioning and maintaining concentration, persistence, or pace. (Id. at 278-88.) Dr. Anderson also conducted a mental residual functional capacity assessment and found "there are no ongoing marked impairments in [Smith's] ability to understand, concentrate,

remember, adapt, relate, or persist with tasks on a sustained basis." (Id. at 300.) However, Dr. Anderson determined that Smith would experience moderate limitations in the following areas: the ability to (1) sustain an ordinary routine without special supervision; (2) complete a normal workday without interruptions from psychologically based symptoms; (3) accept instructions and respond appropriately to criticism from supervisors; and (4) respond appropriately to changes in the work setting. (Id. at 298-99.)

On May 17, 2010, Dr. Savits reviewed the MRI results of Smith's cervical and lumbar spines. (Id. at 274, 361.) These were the same MRI results that formed the basis of Dr. Glusker's reports. (Id. at 273-74.) Dr. Savits reported that Smith declined an epidural injection and stated he did not want surgery. (Id. at 361.) Dr. Savits referred Smith to an orthopedist and prescribed Tylenol with Codeine and a back brace. (Id.)

On May 22, 2010, Dr. Newman completed a mental status examination and found that Smith was unchanged and that he had no side effects from his medication. (Id. at 355.) Dr. Newman renewed Smith's prescriptions. (Id.)

On May 25, 2010, Smith received a certificate from the PAC Program of Brooklyn stating that he successfully completed a chemical dependency program. (Id. at 372.) A July 12, 2010, urine toxicology exam was negative, including for opiates. (Id. at 391.)

On July 10, 2010, and again on September 7, 2010, Smith visited Dr. Newman. (Id. at 356, 390.) Each time Dr. Newman reported Smith to be anxious and irritable and renewed his prescriptions. (Id.)

On November 15, 2010, Dr. Glusker completed a report in which she indicated that Smith was capable of lifting and carrying two pounds for up to one-third of an eight hour day. (Id. at 375.) Dr. Glusker reported that Smith could stand and walk up to two hours a day and that

6

he could sit for less than four hours a day. (Id.) Dr. Glusker also noted that Smith had a limitation on pushing or pulling due to pain in his upper and lower extremities. (Id.)

On February 14, 2011, a report from the SEL Medical Group indicated that Smith was being treated for chonic lower back pain, disc herniation at L4-5, cervical radiculopathy, disc herniation at C3-4, L5, C6, and chronic knee pain. (Id. at 410.) No physician's name or signature appears on this note. (Id.)

## II.    PROCEDURAL HISTORY

### a.  The March 8, 2010, SSI Application

On March 8, 2010, Smith applied for SSI disability benefits. (Id. at 12, 108-11.) Smith alleged disability as of August 22, 2008. (Id.) In his application, Smith reported that he was receiving public assistance benefits of $352 a month. (Id.) L. Searl, an SSA employee who assisted Smith with his application, observed that Smith had no problems understanding, being coherent, concentrating, sitting, standing, or walking. (Id. at 149-50.)

### b.  The Administrative Hearings

By Notice dated May 18, 2010, the SSA denied Smith's claim for disability. (Id. at 59-62.) Smith appealed the Notice by filing a request for a hearing before an Administrative Law Judge. (Id. at 63-65, 196-203.)

On December 1, 2010, Smith appeared and testified before ALJ Margaret Donaghy in Brooklyn, New York. (Id. at 26-56.) Smith was represented by an attorney at the hearing. (Id. at 26, 28.) A vocational expert, Ms. Edna Clark, testified at the request of the ALJ. (Id. at 28.) Clark testified that an individual with the capacities such as Smith could work as a final assembler, hand trimmer, or cafeteria attendant. (Id. at 50-51.)

On February 14, 2011, a letter from the SEL Medical Group was submitted to the ALJ on Smith's behalf, stating that Smith "suffers from Chronic Lower Back Pain, Disk herniation L4-5, Cervical Radiuclopathy, Disk Herniation C3-C4 L5 C6, and Chronic Knee Pain." (Id. at 410.)

By Notice of Decision dated March 25, 2011, ALJ Donaghy denied Smith's claim for benefits, finding that while he was functionally limited due to lumbar spondylosis, cervical disc disease, a personality disorder, and a mood disorder, Smith nonetheless retained the exertial residual functional capacity for "light work" that did not require performance beyond simple instructions with no sustained contact with the general public in a low stress environment. (Id. at 16.) Accordingly, ALJ Donaghy found that Smith "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Id. at 19.) Based on this finding, and the jobs identified by the vocational expert, the ALJ determined that Smith was not disabled. (Id.)

### c. The Appeal to the Commissioner's Appeal Council

Smith appealed to the Commissioner's Appeals Council. (Id. at 7.) However, by Notice of Appeals Council Action dated August 8, 2011, the Appeals Council declined the appeal, making the ALJ's March 25, 2011, Notice of Decision the "final" decision on Smith's March 8, 2010, application for disability benefits. (Id. at 1-7.)

### d. Complaint for Judicial Review

On September 30, 2011, Smith filed the instant Complaint seeking judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), of the SSA's decision that he was not disabled and therefore not entitled to SSI disability benefits. (See Compl. (Dkt. 1) ¶ 2.) Smith moved and the Commissioner cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil

Procedure 12(c).  (See Pl. Mot. (Dkt. 18); Pl. Mem. (Dkt. 19); Def. Cross-Mot. (Dkt. 20); Def. Mem. (Dkt. 21); Def. Reply (Dkt. 23).)

## III.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law." Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its Local 537, 47 F.3d 14, 16 (2d Cir. 1995); see also Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988) ("Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings."). The standard for reviewing a Rule 12(c) motion is the same standard that is applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. See Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive either kind of motion, the complaint must contain a "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). A court is required to "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Gorman v. Consol. Edison Corp., 488 F.3d 586, 591-92 (2d Cir. 2007). In addition to the pleadings, the court may consider "statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

### B.     Standard of Review of Final Determinations of the Social Security Agency

"The role of a district court in reviewing the Commissioner's final decision is limited."

Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19,

2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the

record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). "A district court may

set aside the Commissioner's determination that a claimant is not disabled only if the factual

findings are not supported by 'substantial evidence' or if the decision is based on legal error."

Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); see also 42 U.S.C. § 405(g). "[S]ubstantial

evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir.

2013) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks

omitted)). Thus, in sum, the ALJ's decision is binding on this court only if (1) the ALJ has

applied the correct legal standard and (2) its findings are supported by evidence that a reasonable

mind would accept as adequate. See Pogozelski, 2004 WL 1146059, at *9.

### C.     Determination of Disability

"To receive federal disability benefits, an applicant must be 'disabled' within the

meaning of the [Social Security] Act." Shaw, 221 F.3d at 131; see also 42 U.S.C. § 423. A

claimant is "disabled" within the meaning of the Act if he has an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The

impairment must be of "such severity that [the claimant] is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The SSA has promulgated a five-step procedure for determining whether a claimant is "disabled" under the Act. See 20 C.F.R. § 404.1520(a)(4).

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [per se] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998)).

Ultimately, the "burden is on the claimant to prove that he is disabled." Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). But if the claimant shows at step four that his impairment renders him unable to perform his past work, there is a shift in the burden of proof at step five that requires the Commissioner to "show that there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam); see also Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) ("The claimant bears the burden of proof in the first four steps of the sequential inquiry; the Commissioner bears the burden in the last."). In making the determinations required by the Social Security Act and the regulations promulgated thereunder, "the Commissioner must consider (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's

11

symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational

background, age, and work experience." Pogozelski, 2004 WL 1146059, at *10 (citing Carroll,

705 F.2d at 642). Moreover, "the ALJ conducting the administrative hearing has an affirmative

duty to investigate facts and develop the record where necessary to adequately assess the basis

for granting or denying benefits." Id. (citing Sims v. Apfel, 530 U.S. 103, 110-11 (2000); Shaw,

221 F.3d at 134).

## IV.    DISCUSSION

Smith argues that the ALJ erred in concluding that he was not disabled under the Social

Security Act as that decision was not supported by substantial evidence and was based on errors

of law. (Compl. ¶ 13.) Smith does not, however, dispute the first three steps of the ALJ's five-

step analysis in which the ALJ found that Smith: (1) "has not engaged in substantial gainful

activity since March 8, 2010"; (2) "has the following severe impairments: lumbar spondylosis,

cervical degenerative disc disease, substance abuse, mood disorder, and personality disorder with

antisocial features"; and (3) "does not have an impairment or combination of impairments that

meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1 . . . ." (Tr. at 14.)

At step four, the ALJ found that Smith "has the residual functional capacity to perform

light work . . . except he can push and pull only occasionally and occasionally climb, balance,

stoop, kneel, crouch and crawl." (Id. at 16.) The ALJ further determined that Smith could

"understand, remember and carry out simple instructions, relate appropriately to others only in a

low contact setting . . . and work in a low stress work setting, meaning a setting with only

occasional decision-making and judgment and only occasional changes in work setting,

procedures, and tools." (Id.) Based on that residual functional capacity, the ALJ found, at step

five, that Smith was "unable to perform any past relevant work," but that there were "jobs that exist in significant numbers in the national economy that [Smith] c[ould] perform." (Id. at 18-19.)

Smith argues that the ALJ committed two errors in his determination of Smith's residual functional capacity at step four (and upon which the ALJ premised his unfavorable conclusion at step five). He asserts that the ALJ: (1) failed to properly evaluate the opinion of Smith's treating physician, Dr. Alla Glusker, and (2) improperly dismissed Smith's subjective complaints of pain. (Pl. Mem. at 16-23.) Additionally, Smith argues that new and material evidence warrants remand for additional consideration. (Id. at 23-25.)

### A.     Evaluation of the Opinion of Smith's Treating Physician

Smith argues that the ALJ failed to properly evaluate the opinion of Smith's treating physician, Dr. Alla Glusker, during the relevant period. (Id. at 16.) The court agrees.

Under SSA Regulations, the ALJ must give special weight to opinions from a claimant's treating physician. See 20 C.F.R. § 404.1527(c)(2); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("[A] treating physician's report is generally given more weight than other reports."). A "treating physician" is a physician "who has provided the [claimant] with medical treatment or evaluation, and who has or who had an ongoing treatment and physician-patient relationship with the individual." Sokol v. Astrue, No. 04-CV-6631 (KMK), 2008 WL 4899545, at *12 (S.D.N.Y. Nov. 12, 2008) (internal quotation marks omitted).

The "treating physician rule" requires an ALJ to give a treating physician's opinion "controlling weight" if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); Meadors v. Astrue, 370 F. App'x 179, 182 (2d Cir. 2010). A

13

treating physician's opinion, however, does not always trump other evidence. Though "a treating physician's report is generally given more weight than other reports, . . . [w]hen other substantial evidence in the record conflicts with the treating physician's opinion, . . . [the treating physician's] opinion will not be deemed controlling." Snell, 177 F.3d at 133; see also Hilliard v. Colvin, No. 13-CV-1942 (AJP), 2013 WL 5863546, at *15 (S.D.N.Y. Oct. 31, 2013). As discussed above in Part III.B, "substantial evidence" requires "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Selian, 708 F.3d at 417 (quoting Richardson, 402 U.S. at 401 (internal quotation marks omitted)). Ultimately though, "some kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner" and therefore on those issues, a treating physician's opinion is never given controlling weight. Snell, 177 F.3d at 133 (internal quotation marks omitted); see also Smith v. Astrue, No. 10-CV-6018 (NGG), 2013 WL 1681146, at *5 (E.D.N.Y. Apr. 17, 2013).

Even when an ALJ does not give *controlling* weight to a treating physician's opinion, the ALJ must consider several factors to determine how *much* weight to give the assessment. See 20 C.F.R. § 404.1527(c)(2); see also Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) ("An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion.") (internal quotation marks omitted). Specifically, the ALJ must assess "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Austin v. Colvin, No. 12-CV-1470 (NGG), 2013 WL 4077884 (E.D.N.Y. Aug. 12, 2013) (quoting Schaal v. Apfel, 134 F.3d 496, 503 (2d

14

Cir. 1998)); see also 20 C.F.R. § 404.1527(c)(2)-(6). While the ALJ need not mechanically recite each of these factors, it must "appl[y] the substance of the treating physician rule." Halloran, 362 F.3d 32.

Additionally, the regulations also provide that the Commissioner "will always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [a claimant's] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions, Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996). This requirement is designed to assist a court's "review of the Commissioner's decision and let[s] claimants understand the disposition of their cases." Halloran, 362 F.3d at 33 (internal quotation marks omitted).

In reviewing the ALJ's findings, "a reasonable basis for doubt that the ALJ applied the correct legal standard in determining the weight to afford the treating physician can be grounds for remand." Sutherland v. Barnhart, 322 F. Supp. 2d 282, 291 (E.D.N.Y. 2004) (Garaufis, J.) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). The court will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion," or when the court encounters "opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33.

Here, Dr. Alla Glusker, the treating physician at issue, treated Smith on several occasions in 2010. Specifically, on March 30, 2010, she ordered x-rays of Smith's knees, right elbow, and

spine (Tr. at 272-76) and on April 24, 2010, reported on the results of an MRI of Smith's cervical spine and lumbar spine (id. at 273). On November 15, 2010, Dr. Glusker completed a report indicating that Smith was capable of lifting and carrying two pounds for one-third of an eight-hour day. (Id. at 375.) Dr. Glusker further reported that Smith could stand and walk up to two hours per day and he could sit for less than four hours per day. (Id.) Dr. Glusker also noted that Smith had a limitation in pushing or pulling due to pain in his upper and lower extremities. (Id.)

In reviewing Dr. Glusker's report, the ALJ found that Dr. Glusker's opinion was "unsupported by a treatment record . . . and is inconsistent with the record as a whole." (Id. at 17.) First, the ALJ found that Dr. Glusker's opinion was unsupported by Smith's treatment history because Smith: (1) "denied receiving injections for his pain"; (2) "only attended one physical therapy session"; (3) "did not make an appointment with a pain management doctor until the month of his hearing"; and (4) "was not taking any pain medication." (Id.) Second, the ALJ found that Dr. Glusker's opinion was inconsistent with the opinions of consultative physicians—most notably Dr. Caiati. (Id.) ("As [Dr. Caiati's] opinion is consistent with objective medical testing . . . and the results of a comprehensive examination, I have accorded it great weight.").

As discussed above, in order to determine whether the ALJ properly evaluated Dr. Glusker's opinion, the court must first decide whether that opinion was entitled to controlling weight. See 20 C.F.R. § 404.1527(c)(2). If not, the court must decide whether the ALJ provided "good reasons" for discounting Dr. Glusker's opinion, see Halloran, 362 F.3d at 33, based on the factors set forth in the regulations, see 20 C.F.R. § 404.1527(c)(2); Schaal, 134 F.3d at 503-04.

16

1.    Controlling Weight of the Treating Doctor's Opinion

Dr. Glusker's opinion was not entitled to controlling weight because it was inconsistent

with other substantial evidence in the record. See 20 C.F.R. § 404.1527(c)(2); Snell 177 F.3d at

133 ("When other substantial evidence in the record conflicts with the treating physician's

opinion, however, that opinion will not be deemed controlling."). As the ALJ noted, Dr. Caiati

reported that Smith retained some residual functional capacity, an opinion that was inconsistent

with that of Dr. Glusker. (Tr. at 17-18.)

On May 4, 2010, Dr. Caiati conducted a consultative examination of Smith. (Id. at 268-

77.) Dr. Caiati found that Smith "appeared to be in no acute distress." (Id. at 269.) He reported

that Smith had a "minimal limp," and "[n]eeded no help changing for [the] exam or getting on

and off [the] exam table." (Id.) Dr. Caiati diagnosed: (1) "Cervical degenerative disks and

herniated discs"; (2) "Lumbosacral arthritis, bulging, and herniated disks"; (3) "History of right

and left knee pain, diagnosis unavailable"; and (4) "Depression with history of substance abuse."

(Id. at 270.) Based on this diagnosis, Dr. Caiati determined that Smith had: (1) unrestricted

sitting, reaching, pushing, and pulling; (2) minimal limitations for standing, walking, and

climbing due to a limp in the left leg; and (3) indeterminable assessment as to bending and

lifting. (Id. at 270-71.) Consequently, Dr. Glusker and Dr. Caiati disagreed as to whether Smith

had any limitations related to pushing and pulling, and the degree to which Smith was restricted

in walking. (Id. at 270-71, 375.)

Ultimately, the ALJ accorded Dr. Caiati's opinion "great weight" because it was

"consistent with objective medical testing . . . and the results of a comprehensive examination."

(Id. at 17.) Because Dr. Glusker's opinions were inconsistent with those of Dr. Caiati, whose

opinion was based on substantial evidence in the record, the court concludes that they were not

entitled to controlling weight. See 20 C.F.R. § 404.1527(c)(2); Snell, 177 F.3d at 133.

17

2. The ALJ's "Good Reasons" for Discounting Dr. Glusker's Opinion

Having found that the treating physician's assessment of Smith's functioning capacity was inconsistent with other substantial evidence in the record, the next question for the court is whether the ALJ provided "good reasons" for discounting Dr. Glusker's opinions based on the factors set forth in the regulations. See 20 C.F.R. § 404.1527(c)(2); Halloran, 362 F.3d at 32-33; Schaal, 134 F.3d at 503-04. The court concludes the ALJ's decision to discount Dr. Glusker's opinion was not supported by good reasons.

The ALJ provided no reasons that were germane to the factors set forth in the regulations. In fact, the ALJ wrote only one sentence of analysis regarding Dr. Glusker's opinions: "Although the record contains a report from Dr. Glusker, treating physician, indicating severe limitations exceeding the above residual functional capacity assessment (Exhibit 19F), this opinion is not accorded significant weight as it is unsupported by a treatment record (Exhibit 26F) and is inconsistent with the record as a whole." (Tr. at 17.) This statement relates only to the determination of whether Dr. Glusker's opinion is entitled to controlling weight; it does not itself supply with sufficient specificity the "good reasons" for the weight ultimately accorded that opinion such that this court might properly evaluate the ALJ's finding. See Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) ("[T]he ALJ must comprehensively set forth reasons for the weight assigned to a treating physician's opinion") (quoting Halloran, 362 F.3d at 33); Sutherland, 322 F. Supp. at 291 ("It is not enough for the ALJ to simply say that [the treating physician's] findings are inconsistent with the rest of the record.").

Moreover, the ALJ did not apply any of the factors provide by the regulations for determining the weight accorded to a non-controlling opinion of a treating physician. First, the ALJ did not assess the length, nature, and extent of the relationship between Smith and Dr.

18

Glusker. See 20 C.F.R. § 404.1527(c)(2). Second, the ALJ did not assess evidence in the record that supported Dr. Glusker's opinions. Id. Third, the ALJ did not explain *how* Dr. Glusker's findings specifically contradict the rest of the record and instead simply stated the findings were inconsistent. Id. Fourth, the ALJ did not assess the specializations of Dr. Glusker, Dr. Caiati, or any of Smith's various other physicians. Id. Finally, the ALJ did not consider any "other relevant factors." Id.

In sum, the ALJ failed to provide any "good reason[]" for the lack of weight he gave to Dr. Glusker's opinion. See Burgess, 537 F.3d at 129; Halloran, 362 F.3d at 32-33; Schaal, 134 F.3d at 503-04. Because the ALJ's analysis failed to follow the treating physician rule, the court must remand this case for a proper evaluation of Dr. Glusker's opinion. See Halloran, 362 F.3d at 33.

**B.    Other Issues**

Smith raises two other challenges to the ALJ's decision, claiming that: (1) the ALJ failed to explain her rejection of Mr. Smith's subjective complaints of pain; and (2) that new and material evidence warrants remand for additional consideration. (Pl. Mem. at 21-25.)

**1.    Subjective Complaints of Pain**

Smith argues that the ALJ failed to properly evaluate Smith's subjective accounts of his pain. (Id. at 21-23.) The court agrees.

SSA regulations require the Commissioner, in making disability determinations, to consider all of a claimant's symptoms, including subjective complaints of pain. See 20 C.F.R. § 404.1529(a). The Second Circuit has held that a claimant's testimony regarding subjective pain and suffering is not only "probative on the issue of disability, but may serve as the basis for establishing disability." Coscia v. Astrue, No. 08-CV-3042 (DLI), 2010 WL 3924691, at *8 (E.D.N.Y. Sept. 29, 2010) (quoting Echevarria v. Sec'y of Health & Human Servs., 685 F.2d

19

751, 756 (2d Cir. 1982)). When a claimant has "a medically determinable impairment(s) that could reasonably be expected to produce" the alleged pain, the Commissioner "must evaluate the intensity, persistence," and functionally limiting effects of that pain. 20 C.F.R. § 404.1529(c)(1); Lewis v. Astrue, No. 11-CV-7538 (JPO), 2013 WL 5834466, at *33 (S.D.N.Y. Oct. 30, 2013).

Further, because a claimant's symptoms, such as pain, "sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," 20 C.F.R. § 404.1529(c)(2), once a claimant has been found to have a pain-producing impairment, the Commissioner may not reject the claimant's statements about his pain solely because objective medical evidence does not substantiate those statements, id. § 404.1529(c)(3). See also Lewis, 2013 WL 5834466, at *33 ("To the extent that the claimant's pain contentions are not substantiated by the objective medical evidence, the ALJ must evaluate the claimant's credibility.") (internal quotation marks omitted). Rather, the ALJ must consider the following factors in evaluating a claimant's complaints of pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication that the claimant takes to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief pain or other symptoms; (6) any measures the claimant uses to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See id. §§ 404.1529(c)(3)(i)-(vii); Lopez v. Astrue, No. 09-CV-3872 (FB), 2010 WL 4054116, at *6 n.4 (E.D.N.Y. Oct. 8, 2010).

Although it is the function of the Commissioner and not the reviewing court to evaluate a claimant's credibility, a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Oliveras ex rel.

Gonzalez v. Astrue, No. 07-CV-2841 (RMB), 2008 WL 2540816, at *2 (S.D.N.Y. June 25, 2008) (quoting Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988)). Therefore, an "ALJ's decision to discount a claimant's subjective complaints of pain" will be upheld only when that decision is "supported by substantial evidence." Aponte v. Sec'y Dept. of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984). As discussed above in Parts III.B and IV.A, "substantial evidence" requires "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Selian, 708 F.3d at 417 (quoting Richardson, 402 U.S. at 401 (internal quotation marks omitted)).

That standard is not satisfied in this case. The ALJ noted that Smith "allege[d] suffering from back pain secondary to herniated discs and arthritis." (Tr. at 16.) The ALJ did not find this account credible and discounted Smith's back pain because Smith declined to receive epidural steroid injections for the pain, attended only a single physical therapy session, delayed at least one year in making an appointment with a pain management specialist, and was not taking any medications as of the date of the hearing. (Id. at 17.) However, the ALJ never inquired at the hearing as to whether Smith has a justifiable reason for declining the injections. (Pl. Mem. at 21.) Moreover, the ALJ failed to acknowledge that Smith clearly explained at the hearing that he did not seek ongoing physical therapy because he did not find it beneficial to his condition. (Tr. at 40.) Finally, the ALJ failed to acknowledge that Smith testified that he did not revisit a pain management specialist or take pain medication because Smith knew that, based on a previous visit, the prescribed treatment would have been for Percocet or Oxycodone, two substances which would have been a violation of the terms of Smith's drug treatment program.[1] (Id. at 36.) Thus, while the ALJ did consider the relevant factors, see 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii),

---

[1]      As a result, Smith was not eligible to use either substance for pain treatment during the relevant period. (Tr. at 36.)

and set forth her findings with sufficient specificity to permit adequate review, see Williams, 859

F.2d at 260-61, her decision to discount Smith's subjective account of his back pain failed to

evaluate Smith's legitimate reasons for refusing certain treatments and thus was not supported by

substantial evidence, see Aponte, 728 F.2d at 591.

Additionally, the ALJ's determination that Smith's allegations were inconsistent with the

medical evidence, (see Tr. at 17-18), was tainted by the ALJ's failure to properly evaluate the

opinions of Smith's treating physician, see Part III.A—a failure that affected how the ALJ

viewed the totality of the medical evidence.  See Sutherland, 322 F. Supp. 2d at 291 (the ALJ's

failure to properly apply the treating physician rule "affect[ed] consideration of the ALJ's

treatment of the plaintiff's subjective complaints.").  On remand, the ALJ is directed to consider

Smith's subjective complaints in light of the ALJ's new evaluation of Dr. Glusker's opinions.

See id.

### 2.    New and Material Evidence

Finally, Smith argues that new and material evidence warrants remand for additional

consideration.  (Pl. Mem. at 23-25.)  Smith argues that the December 17, 2011, psychiatric report

is "new" and "material" because it: (1) was not produced at the time of the ALJ's Notice of

Decision, and (2) reveals depression and post-traumatic stress disorder—two conditions that

were not previously contemplated by the ALJ.  (Id.)  However, because the court must remand

Smith's case for a proper evaluation of the weight to be given to Dr. Glusker's opinion, the court

need not address whether the evidence satisfies the Second Circuit's test for new and material

evidence.  See Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988) (holding that to warrant

remand, evidence must be "'new' and not merely cumulative of what is already in the record[,] .

. . material, that is, both relevant to the claimant's condition during the time period for which

22

benefits were denied and probative[,] . . . [and f]inally, [the] claimant must show . . . good cause for her failure to present the evidence earlier").

## IV.   CONCLUSION

For the foregoing reasons, the Commissioner's cross-motion for judgment on the pleadings is DENIED, Plaintiff's motion for judgment on the pleadings is GRANTED, and this case is REMANDED to the Commission for a proper evaluation of the opinions of Dr. Glusker and a reevaluation of Smith's subjective complaints of pain in light of all the medical evidence.[2]

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York                              NICHOLAS G. GARAUFIS
       December  5 , 2013                               United States District Judge

---

[2]      The court does not find that there is unequivocal evidence of disability or that further findings would be unhelpful to assure proper disposition of Smith's claim; thus, a remand for further proceedings—rather than solely for calculation of benefits—is proper. See Pokorny v. Astrue, No. 09-CV-1694 (NGG), 2010 WL 5173593, at *5 (E.D.N.Y. Dec. 14, 2010); Pogozelski, 2004 WL 1146059, at *20.